**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILDEARTH GUARDIANS,
                              *Petitioner*,

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY; GINA MCCARTHY, in her
official capacity as Administrator of
the U.S. Environmental Protection
Agency,*
                              *Respondents*,

SIERRA PACIFIC POWER COMPANY;
NEVADA POWER COMPANY; THE
STATE OF NEVADA, DIVISION OF
ENVIRONMENTAL PROTECTION,
                 *Respondents-Intervenors*.

No. 12-71523

OPINION

On Petition for Review of an Order of the
Environmental Protection Agency

Argued and Submitted
May 14, 2014—San Francisco, California

---

 * Gina McCarthy is substituted for her predecessor, Lisa P. Jackson, as
Administrator of the U.S. Environmental Protection Agency. Fed. R. App.
P. 43(c)(2).

Filed July 17, 2014

Before: M. Margaret McKeown and Milan D. Smith, Jr.,
Circuit Judges, and James L. Robart, District Judge.[**]

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[***]

### Environmental Law

The panel dismissed in part and denied in part a petition for review of the Environmental Protection Agency's approval of the State of Nevada's State Implementation Plan for regional haze under the Clean Air Act.

WildEarth Guardians, a non-profit environmental organization, alleged that Nevada's State Implementation Plan (SIP) was inadequate, and the EPA's decision to approve it was arbitrary and capricious.

The panel held that WildEarth Guardians lacked Article III standing to challenge the EPA's approval of the SIP's formulation of reasonable progress goals for improving visibility conditions in the Jarbridge Wilderness Area in northeastern Nevada. The panel also held that WildEarth

---

[**] The Honorable James L. Robart, District Judge for the U.S. District Court for the Western District of Washington, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Guardians had standing to challenge the EPA's decision to approve Nevada's Sulfur Dioxide Best Available Retrofit Technology determination for the Reid Gardner Generating Station in southern Nevada, but concluded that the EPA's decision was not arbitrary and capricious. The panel further concluded that the EPA's approval of Nevada's SIP did not violate any requirements imposed by 42 U.S.C. § 7410(1).

## COUNSEL

Sarah K. McMillan (argued), WildEarth Guardians, Missoula, Montana; James J. Tutchton, WildEarth Guardians, Centennial, Colorado; Melissa A. Hailey, W. Randolph Barnhart, P.C., Denver, Colorado, for Petitioner.

David A. Carson (argued), United States Department of Justice, Environment and Natural Resources Division, Denver, Colorado, for Respondents.

Lisa E. Jones (argued), Samuel B. Boxerman, and James R. Wedeking, Sidley Austin LLP, Washington, D.C.; Thomas Woodworth, NV Energy, Inc., Las Vegas, Nevada, for Respondents-Intervenors Nevada Power Company and Sierra Pacific Power Company.

Belinda A. Suwe (argued), Carson City, Nevada, for Respondent-Intervenor State of Nevada, Department of Conservation and Natural Resources, Division of Environmental Protection.

**OPINION**

M. SMITH, Circuit Judge:

WildEarth Guardians (WildEarth), a non-profit environmental organization, petitions for review of the Environmental Protection Agency's (EPA) approval of the State of Nevada's State Implementation Plan (SIP) for regional haze under the Clean Air Act, 42 U.S.C. §§ 7401–7671q (CAA). According to WildEarth, Nevada's SIP is inadequate, and the EPA's decision to approve it was arbitrary and capricious. WildEarth thus contends that the EPA should have instead developed its own Federal Implementation Plan (FIP) under the CAA.

We conclude that WildEarth lacks Article III standing to challenge the EPA's approval of the SIP's formulation of reasonable progress goals for improving visibility conditions in the Jarbridge Wilderness Area in northeastern Nevada. While WildEarth has standing to challenge the EPA's decision to approve Nevada's Sulfur Dioxide ($SO_2$) Best Available Retrofit Technology (BART) determination for the Reid Gardner Generating Station (Reid Gardner) in southern Nevada, we hold that the EPA's decision was not arbitrary and capricious. We further conclude that the EPA's approval of Nevada's SIP did not violate any requirements imposed by 42 U.S.C. § 7410(l). Accordingly, we dismiss the petition for review in part and deny the petition in part.

## LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND

This petition for review concerns states' duty under the CAA to develop plans aimed at improving visibility in

"mandatory Class I Federal areas," such as national wilderness areas and certain national parks, 40 C.F.R. § 51.308, and the EPA's concomitant duty to ensure that such plans are legally adequate.

## I.   Statutory and Regulatory Framework

In 1977, Congress enacted Section 169A of the CAA, which established "as a national goal the prevention of any future, and the remedying of any existing, impairment of visibility in mandatory [C]lass I Federal areas which impairment results from manmade air pollution." 42 U.S.C. § 7491(a)(1).

### A.   Implementation Plans

Under the CAA, the EPA must establish national ambient air quality standards (NAAQS) for certain air pollutants. The EPA must also promulgate regulations designed to prevent the impairment of visibility in "mandatory [C]lass I Federal areas," including national wilderness areas and certain national parks. 42 U.S.C. §§ 7491(a)–(b), 7492(e). To ensure that these standards are met, the CAA requires each state to submit a SIP to the EPA, which must "contain such emission limits, schedules of compliance, and other measures as may be necessary to carry out" the EPA's applicable regulations. *Id.* § 7492(e)(2).

Once a state has submitted its SIP to the EPA, the EPA reviews it for compliance with the CAA. *Id.* § 7410(k)(3). If a state fails to submit a SIP, or if the EPA concludes that a SIP is inadequate, then the EPA must promulgate a FIP within two years. *Id.* § 7410(c).

## B. Regional Haze Provisions

As noted above, Congress amended the CAA in 1977 and "declare[d] as a national goal the prevention of any future, and the remedying of any existing, impairment of visibility in mandatory [C]lass I Federal areas which impairment results from manmade air pollution." *Id.* § 7491(a)(1). To this end, Congress required the EPA to issue regulations assuring "reasonable progress toward meeting the national goal." *Id.* § 7491(a)(4).

Acting under this statutory authority, the EPA promulgated the Regional Haze Rule in 1999. Regional Haze Regulations, 64 Fed. Reg. 35714 (July 1, 1999). This rule required states to submit regional haze SIPs to the EPA by December 17, 2007. It also requires states to submit SIP revisions to the EPA by July 31, 2018, and every ten years thereafter. 40 C.F.R. § 51.308(f).

### 1. Reasonable Progress Goals

The Regional Haze Rule directs states to establish reasonable progress goals aimed at achieving natural visibility conditions in Class I Federal areas. 40 C.F.R. § 51.308(d)(1). These goals must provide for an improvement in visibility for the days in which visibility is most impaired over the period ending on July 31, 2018 (worst days), and must also ensure no worsening of visibility during the least impaired days over the course of that period (best days). *Id.*

## 2.  BART

In addition to requiring states to establish reasonable progress goals for improving visibility in Class I Federal areas, the Regional Haze Rule requires SIPs to "contain[] emission limitations representing BART . . . for each BART-eligible source that may reasonably be anticipated to cause or contribute to any impairment of visibility in any mandatory Class I Federal area."  40 C.F.R. § 51.308(e).  As defined in the regulations, BART is "an emission limitation based on the degree of reduction achievable through the application of the best system of continuous emission reduction for each pollutant which is emitted by an existing stationary facility." *Id.* § 51.301.

Under the regulations, a pollution source is "BART-eligible" only if it "has the potential to emit 250 tons per year or more of any air pollutant."  *Id.*  States must formulate emission limitations for such sources on a case-by-case basis, weighing the following five factors: (1) "the costs of compliance"; (2) "the energy and non[-]air quality environmental impacts of compliance"; (3) "any existing pollution control technology in use at the source"; (4) "the remaining useful life of the source"; and (5) "the degree of improvement in visibility which may reasonably be anticipated to result from the use of such technology." 42 U.S.C. § 7491(g)(2); Regional Haze Regulations and Guidelines for BART Determinations, 70 Fed. Reg. 39104, 39106–07 (July 6, 2005) (codified at 40 C.F.R. pt. 51, App. Y).

To assist states in evaluating which pollution sources are subject to BART, and what emission limitation to set for such sources, the EPA issued the BART Guidelines (Guidelines)

in 2005. 70 Fed. Reg. at 39156–72. The Guidelines provide states with a five-step process for making their case-by-case BART determinations. These five steps subsume the five statutory factors listed above. *Id.* at 39127. First, states identify all available retrofit control technologies. Second, states eliminate technically infeasible options. Third, states evaluate the effectiveness of the remaining control technologies. Fourth, states evaluate the impacts, including the cost of compliance, the energy impacts, any non-air quality impacts, and the remaining useful life of the facility. Finally, states evaluate the visibility impacts. *Id.* at 39164, 39166.

States must use the Guidelines when making BART determinations for fossil fuel-fired power plants with a total generating capacity greater than 750 megawatts, but the Guidelines are merely advisory for smaller plants. 42 U.S.C. § 7491(b)(2)(B); 40 C.F.R. § 51.308(e)(1)(ii)(B). The BART-eligible power plant at issue here—Reid Gardner— has a generating capacity below 750 megawatts, and so is not subject to the mandatory Guidelines. Approval and Promulgation of Air Quality Implementation Plans, 76 Fed. Reg. 36450, 36463 (June 22, 2011). Nonetheless, Nevada relied on the Guidelines in making its $SO_2$ BART determination for Reid Gardner.

## II. Factual and Procedural Background

Nevada submitted its regional haze SIP to the EPA in October 2009, nearly two years after the deadline for doing so. In its SIP, Nevada provides what it considers to be reasonable progress goals for attaining natural visibility conditions at the Jarbridge Wilderness Area in remote northeastern Nevada, the state's only Class I Federal area.

The SIP further requires limitations on emissions of sulfur dioxide, nitrogen oxides ($NO_x$), and particulate matter for several pollution sources, including Reid Gardner, a coal-fired power plant in southern Nevada.

In June 2011, the EPA proposed to approve Nevada's regional haze SIP. 76 Fed. Reg. at 36450–51. WildEarth then submitted public comments to the EPA, asserting, inter alia, that (1) Nevada's $SO_2$ BART determination for Reid Gardner is inadequate; (2) Nevada ignored certain mandatory factors in setting reasonable progress goals for improving visibility at the Jarbridge Wilderness Area; and (3) the EPA failed to ensure that approving the SIP would not interfere with the attainment or maintenance of the NAAQS.

Notwithstanding WildEarth's concerns, the EPA approved the majority of Nevada's regional haze SIP on March 26, 2012.[1] Approval and Promulgation of Air Quality Implementation Plans, 77 Fed. Reg. 17334 (Mar. 26, 2012). WildEarth then timely filed this petition for review, challenging the EPA's approval of Nevada's SIP and the agency's failure to develop a FIP. Nevada Power Company and Sierra Pacific Power Company (together, Nevada Power) and the Nevada Division of Environmental Protection (NDEP) subsequently intervened.

**JURISDICTION AND STANDARD OF REVIEW**

We have jurisdiction under 42 U.S.C. § 7607(b)(1). "[W]e may set aside the challenged agency action only if it is

---

[1] The EPA approved the entirety of the SIP except for Nevada's $NO_x$ BART determination for Reid Gardner. That aspect of Nevada's SIP is not at issue here.

'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *NRDC v. EPA*, 638 F.3d 1183, 1190 (9th Cir. 2011) (quoting 5 U.S.C. § 706(2)(A)). "An agency action is arbitrary and capricious if the agency has: relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1109 (9th Cir. 2012) (quoting *Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001)).

## DISCUSSION

### I.  Standing

Although the EPA does not contest WildEarth's standing to bring this petition for review, Nevada Power and the NDEP assert, respectively, that WildEarth lacks standing to pursue some or all of its claims.  In any event, "standing is not subject to waiver," *United States v. Hays*, 515 U.S. 737, 742 (1995), and we have "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

As discussed in greater detail below, WildEarth hinges its standing to challenge the EPA's approval of Nevada's SIP on a declaration submitted by Veronica Egan, a member of the organization who lives in Colorado.  Even though Egan lives

out of state, she regularly visits Nevada, and she avers that (1) seeing pollution from power plants such as Reid Gardner distresses her; (2) she worries about the health effects of such pollution; and (3) she visits national parks where visibility conditions are adversely affected by pollution from Reid Gardner.

## A.  Legal Framework

WildEarth has the burden to demonstrate standing for each claim that it asserts.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  To establish Article III standing, a claimant "must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

As an organization, WildEarth "may assert standing on behalf of [its] members as long as the 'members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (quoting *Friends of the Earth*, 528 U.S. at 181).

In this petition for review, WildEarth plainly seeks to promote its organizational purpose by requiring the EPA to reject Nevada's regional haze SIP and issue a FIP in its place.

Further, such a claim for relief does not "require[] individualized proof," and is "thus properly resolved in a group context." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 344 (1977). Accordingly, whether WildEarth has standing to assert its claims turns on whether its member, Veronica Egan, has standing to sue in her own right. *See Friends of the Earth*, 528 U.S. at 181.

## B. Reasonable Progress Goals for the Jarbridge Wilderness Area

WildEarth lacks standing to contest the EPA's approval of Nevada's worst days reasonable progress goals for the Jarbridge Wilderness Area. Under the CAA and its implementing regulations, Nevada must develop reasonable progress goals to improve visibility at the Jarbridge Wilderness Area. Interestingly, Egan, upon whose declaration WildEarth places exclusive reliance, has never visited the Jarbridge Wilderness Area, nor does she have any plans to travel there in the future. More significantly, WildEarth fails to demonstrate that the EPA's approval of Nevada's worst days reasonable progress goals has any causal connection to Egan's claimed injuries. Accordingly, Egan, and therefore WildEarth, lacks standing to challenge the EPA's approval of this aspect of Nevada's SIP.

In her declaration, Egan claims that she regularly "observe[s] air pollution" from the North Valmy Generating Station (North Valmy), a coal-fired power plant located in north-central Nevada. She asserts that the EPA approved Nevada's SIP even though Nevada failed "to assess whether air pollution . . . should be reduced from the North Valmy coal-fired power plant in order to further reduce haze in the region, including in the Jarbridge Wilderness Area." And she

complains that, as a consequence of the EPA's approval of Nevada's SIP, she "will continue to observe offensive amounts of air pollution from the smokestacks of this power plant." She also states that she is "worried that the air pollution will negatively affect [her] health" as she visits the area near the plant.

Even assuming, without deciding, that Egan's concerns about emissions from North Valmy establish an injury in fact, WildEarth fails to satisfy the traceability and redressability requirements of Article III. Egan contends that viewing emissions from North Valmy is aesthetically displeasing, and that it leads her to worry about future health consequences. But Egan fails to show that either her aesthetic displeasure or her health concerns are causally linked to the EPA's approval of Nevada's worst days reasonable progress goals for visibility at the Jarbridge Wilderness Area. *Wash. Envtl. Council*, 732 F.3d at 1141. Similarly, WildEarth fails to show that it is likely, as opposed to merely speculative, that a favorable decision will redress Egan's injuries. *See id.* at 1146.

Nothing in the record suggests that a reduction in emissions from North Valmy would ameliorate Egan's claimed aesthetic injury. Moreover, Egan does not claim—and the record does not otherwise reveal—that a reduction in North Valmy's emissions would improve her health. In short, Egan does not sufficiently link her claimed injury near North Valmy with the EPA's approval of Nevada's goals for the Jarbridge Wilderness Area, nor does she have any credible connection with Jarbridge. Accordingly, WildEarth fails to establish standing to challenge the EPA's approval of Nevada's worst days reasonable progress goals for visibility at the Jarbridge

Wilderness Area, and we dismiss this portion of the petition for review for lack of subject matter jurisdiction.

### C. Reid Gardner SO$_2$ BART Determination

By contrast, as neither the EPA nor Nevada Power contests, WildEarth has standing to challenge Nevada's SO$_2$ BART determination for Reid Gardner. In her declaration, Egan states that she regularly visits Class I Federal areas where visibility is affected by pollution originating in Nevada. In particular, she visits Zion National Park in Utah at least once every other year, she visits Grand Canyon National Park in Arizona at least once a year, and she plans to continue visiting both national parks regularly. According to Egan, these parks "have gotten hazier" over the years, which has impaired her ability "to view and enjoy the scenic vistas within these [p]arks." Egan observes that "[a]ccording to Nevada, the Reid Gardner coal-fired power plant causes haze pollution in 24 Class I [Federal] areas outside of the state, including Grand Canyon and Zion National Parks." As such, Egan claims that "[u]nless and until [the] EPA requires Nevada to better reduce haze-causing pollution, this haze . . . will continue to negatively impact [her] enjoyment of these areas if it persists."

Egan's declaration suffices to establish WildEarth's standing with respect to Nevada's SO$_2$ BART determination for Reid Gardner. Because Egan attests to "specific aesthetic and recreational injuries" resulting from emissions at Reid Gardner, she adequately demonstrates an "injury in fact." *Wash. Envtl. Council*, 732 F.3d at 1140. Her injury is fairly traceable to the EPA's approval of Nevada's SO$_2$ BART determination for Reid Gardner because SO$_2$ pollution from Reid Gardner contributes to visibility impairment at the

national parks she visits. *See id.* at 1141 (explaining that, to show traceability, a plaintiff must demonstrate that her injury is causally linked to the agency's alleged misconduct). Finally, if we ordered the EPA to reject Nevada's SIP on the ground that the $SO_2$ BART determination for Reid Gardner was inadequate, it follows that the EPA's FIP would likely impose stricter emission controls on the plant. Because there is no dispute that a reduction in Reid Gardner's $SO_2$ emissions would improve visibility at the national parks that Egan frequents, it is likely that Egan's injury would be redressed by a favorable decision. *See Friends of the Earth*, 528 U.S. at 180–81.

Because (1) Egan would have standing to challenge the EPA's approval of Nevada's $SO_2$ BART determination for Reid Gardner in her own right; (2) the challenge is germane to WildEarth's purpose; and (3) the relief requested does not require individualized proof, WildEarth has standing to challenge the EPA's approval of Nevada's $SO_2$ BART determination for Reid Gardner.[2]

## II. Merits of the Reid Gardner $SO_2$ BART Determination

Because WildEarth has standing to challenge the EPA's approval of Nevada's $SO_2$ BART determination, we proceed to address the merits of WildEarth's claim.[3] First, WildEarth

---

[2] For similar reasons, WildEarth has standing to challenge the EPA's alleged failure to ensure that Nevada's SIP does not interfere with the attainment or maintenance of the NAAQS under 42 U.S.C. § 7410(l).

[3] In its Statement of Issues, WildEarth also suggests that the EPA's approval of Nevada's regional haze SIP was arbitrary and capricious because Nevada submitted it after the deadline for doing so. But WildEarth fails to develop this argument in its opening brief, and has

argues that the EPA erred in approving Nevada's SIP because Nevada failed to document adequately its consideration of the applicable factors. Second, WildEarth asserts that the EPA erred in approving the SIP because the SIP's $SO_2$ limitation for Reid Gardner purportedly authorizes an increase in the $SO_2$ emission rate at the plant. We address these arguments in turn.

## A. Explanation of the BART Determination

WildEarth's first argument focuses on the level of detail in Nevada's SIP. In describing its BART determination for Reid Gardner, the SIP provides that "[e]mission limitations for BART were established on a case-by-case basis taking into consideration the technology available, the costs of compliance, the energy and non-air quality environmental impacts of compliance, any pollution control equipment in use or in existence at the source or unit, the remaining useful life of the unit and the degree of improvement in visibility which may reasonably be anticipated to result from the use of control technology." As WildEarth acknowledges, this description accurately recites the factors that Nevada was obligated to consider. *See* 42 U.S.C. § 7491(g)(2).

Nonetheless, WildEarth argues that Nevada's SIP fails to document how each of these factors was evaluated when establishing the $SO_2$ emission limitation for Reid Gardner. As such, WildEarth contends that Nevada's SIP contravenes the requirement that the state "must . . . include documentation for all required analyses." 40 C.F.R. § 51.308(e)(1). Relying on our case law, WildEarth further

---

therefore waived it. *See United States v. Kimble*, 107 F.3d 712, 715 n.2 (9th Cir. 1997).

observes that "'[s]tating that a factor was considered . . . is not a substitute for considering it.'" *Beno v. Shalala*, 30 F.3d 1057, 1075 (9th Cir. 1994) (quoting *Getty v. Fed. Sav. & Loan Ins. Corp.*, 805 F.2d 1050, 1055 (D.C. Cir. 1986)).

WildEarth's challenge to the SIP on this basis is unavailing. Before Nevada submitted its regional haze SIP to the EPA, Nevada Power (doing business as NV Energy) retained the firm CH2M HILL to prepare a BART analysis for Reid Gardner. The firm applied the EPA's Guidelines, explained its reasoning in considerable detail, and recommended a BART $SO_2$ limitation of 0.40 pounds per million British thermal units (lb/MMbtu). Nevada then independently reviewed CH2M HILL's recommendation and concluded that a lower emission limitation, 0.15 lb/MMbtu, was warranted. The SIP directs readers to a detailed documentation of Nevada's analysis.

This is not a situation where Nevada simply stated that the required factors were considered, but failed to consider them. *Cf. Beno*, 30 F.3d at 1075. To the contrary, the thorough discussion in CH2M HILL's report, and Nevada's subsequent evaluation of CH2M HILL's conclusions, shows that Nevada conducted the required $SO_2$ BART analysis for Reid Gardner. *Cf. U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 568 (D.C. Cir. 2004) ("[A] federal agency may turn to an outside entity for advice and policy recommendations, provided the agency makes the final decisions itself."); *Assiniboine & Sioux Tribes v. Bd. of Oil & Gas Conservation*, 792 F.2d 782, 795 (9th Cir. 1986) (collecting cases for the proposition that agencies may rely on advice from outside entities so long as agencies do not merely "rubber stamp" outside decisions). Accordingly, the EPA's approval of this aspect of Nevada's SIP was not arbitrary and capricious.

## B. Purported Increase in $SO_2$ Emissions

WildEarth next argues that the Reid Gardner $SO_2$ BART determination is deficient because it allows for increased emissions. Nevada's regional haze SIP fixes an $SO_2$ emission limitation of 0.15 lb/MMBtu at Reid Gardner. According to WildEarth, this limitation exceeds recent emission rates at the plant, which in 2009 ranged from 0.054 to 0.058 lb/MMbtu. Because this data apparently shows that Reid Gardner is capable of maintaining lower $SO_2$ emissions than the 0.15 lb/MMBtu level that Nevada claims represents BART, WildEarth asserts that Nevada's emission limitation for $SO_2$ at Reid Gardner cannot constitute BART. WildEarth also asserts more broadly that a SIP authorizing increased $SO_2$ emissions at Reid Gardner would violate Congress's intent in enacting the 1977 amendments to the CAA.

WildEarth's objection to Nevada's $SO_2$ BART determination rests on a misinterpretation of the relevant data. Specifically, WildEarth's contention that the SIP authorizes increased emissions at Reid Gardner depends on its analysis of annual emission rates at the plant. But, as the EPA observes, annual emission rates are not comparable to the 24-hour average emission limitation reflected in Nevada's SIP. 77 Fed. Reg. at 17338. A review of 24-hour average $SO_2$ emissions at Reid Gardner reveals that the plant has not consistently achieved a 24-hour average limit below 0.15 lb/MMbtu. Moreover, even if Reid Gardner only occasionally exceeds 0.15 lb/MMBTU on a 24-hour basis, emission limitations under the CAA are continuous in nature, and BART must be a limitation that can be achieved on a continuous basis. *See* 42 U.S.C. § 7602(k); 40 C.F.R. § 51.301. Further, the EPA's review of the data refutes WildEarth's claim that, under the SIP, there will be an annual

increase in $SO_2$ emissions from Reid Gardner.  77 Fed. Reg. at 17338.  Thus, WildEarth fails to show that the SIP will exacerbate pollution from Reid Gardner.

The EPA's decision to approve this aspect of Nevada's SIP is entitled to considerable judicial deference, as it represents "an agency's determination in an area involving a 'high level of technical expertise.'"  *Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) (en banc) (quoting *Selkirk Conservation Alliance v. Forsgren*, 336 F.3d 944, 954 (9th Cir. 2003)), *abrogated in part on other grounds by Winter v. NRDC*, 555 U.S. 7, 22 (2008); *see also Ass'n of Irritated Residents v. EPA*, 423 F.3d 989, 997 (9th Cir. 2005) (explaining that determinations that are "scientific in nature" are "entitled to the most deference on review").  Particularly when reviewed under this deferential standard, the EPA's decision to approve Nevada's $SO_2$ BART determination for Reid Gardner was not arbitrary and capricious.

## III.    Interference with Attainment or Maintenance of the NAAQS

Finally, WildEarth argues that the EPA's approval of Nevada's SIP was arbitrary and capricious because the EPA did not make an express finding that the SIP does not interfere with the attainment or maintenance of the NAAQS. According to WildEarth, the EPA was obligated to make such a determination under 42 U.S.C. § 7410(l), which provides that the EPA "shall not approve a revision of a [SIP] if the revision would interfere with any applicable requirement concerning attainment and reasonable further progress."

Even assuming, without deciding, that § 7410(l) applies here, WildEarth's argument is unavailing.    Wildearth

identifies nothing in Nevada's SIP that weakens or removes any pollution controls.  And even if the SIP merely maintained the status quo, that would not interfere with the attainment or maintenance of the NAAQS.  Accordingly, WildEarth fails to show that the EPA's approval of Nevada's SIP contravened § 7410(l).

## CONCLUSION

For the foregoing reasons, we dismiss the petition for review in part and deny the petition in part.

**PETITION DISMISSED IN PART AND DENIED IN PART.**