**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| OREGON WILD, an Oregon nonprofit corporation; SIERRA CLUB, a California nonprofit corporation; CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> KENT CONNAUGHTON, Regional Forester, Pacific Northwest Region, U.S. Forest Service; UNITED STATES FOREST SERVICE, a federal agency, <br><br> Defendants-Appellees, <br><br> and <br><br> MT. ASHLAND ASSOCIATION, <br><br> Intervenor-Defendant-Appellee. | No. 14-35251 <br><br> D.C. No. 1:12-cv-02244-PA <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, Senior District Judge, Presiding

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted October 6, 2016
Portland, Oregon

Before: THOMAS, Chief Judge, and CLIFTON and NGUYEN, Circuit Judges.

Plaintiffs appeal the district court's order granting summary judgment for the United States Forest Service and Regional Forester Kent Connaughton (together, the Forest Service) on Plaintiffs' National Environmental Policy Act claims challenging the Forest Service's failure to prepare a supplemental environmental impact statement for the Mount Ashland ski area expansion project. We affirm.[1]

NEPA requires agencies to prepare environmental impact statements for federal actions "significantly affecting" the environment. 42 U.S.C. § 4332(C). NEPA further requires agencies to prepare supplemental environmental impact statements when "[t]here are significant new circumstances or information relevant to environmental concerns" that bear on "the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1). An agency's refusal to prepare supplemental NEPA analysis is reviewed under the Administrative Procedure Act, *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1109 (9th Cir. 2010), and will be reversed

[1]We deny Plaintiffs' requests for judicial notice. Plaintiffs have failed to establish that the statements asserted in the documents to be noticed are not subject to reasonable dispute. *See* Fed. R. Evid. 201(b).

only if the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). "Whether new information requires supplemental analysis is a classic example of a factual dispute the resolution of which implicates substantial agency expertise." *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012) (internal quotation marks omitted). Deference towards the agency "is highest when reviewing an agency's technical analyses and judgments involving the evaluation of complex scientific data within the agency's technical expertise." *League of Wilderness Defs. Blue Mountains Biodiversity Project v. Allen*, 615 F.3d 1122, 1130 (9th Cir. 2010).

On appeal, Plaintiffs identify five categories of new information relating to the expansion project that they contend trigger supplemental NEPA analysis. As explained below, the Forest Service took a "hard look" at each category of information and reasonably determined that no supplemental NEPA analysis was required. *Idaho Wool Growers Ass'n v. Vilsack*, 816 F.3d 1095, 1107 (9th Cir. 2016). The Forest Service therefore was not arbitrary or capricious in failing to prepare supplemental NEPA analysis here.

*1. Invalidated Aquatic Conservation Strategy amendments.*[2] The Forest

Service was not arbitrary or capricious in failing to prepare supplemental NEPA

analysis in response to the Western District of Washington's 2007 decision

invalidating certain amendments to the Northwest Forest Plan's Aquatic

Conservation Strategy. *See Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l

Maritime Fisheries Servs.*, 482 F. Supp. 2d 1248 (W.D. Wash. 2007). The Forest

Service provided substantial, uncontroverted evidence establishing that the Forest

Service considered all nine objectives identified in the pre-amendment version of

the Aquatic Conservation Strategy when preparing the 2004 environmental impact

statement. This included (1) excerpts from a 2003 draft environmental impact

statement expressly analyzing the expansion project's compliance with all nine

Aquatic Conservation Strategy objectives and (2) excerpts from the 2007 new

information review and 2011 supplemental record of decision identifying specific

---

[2]As an initial matter, we disagree with the Forest Service that Plaintiffs' NEPA claims are barred on appeal to the extent they are based on the invalidated Aquatic Conservation Strategy amendments. Plaintiffs' National Forest Management Act claims and NEPA claims are different claims raising different theories of liability: the NFMA claims allege substantive failure to comply with federal environmental law, and the NEPA claims allege procedural failure to prepare certain disclosures. Consistent with this distinction, the district court resolved the claims separately, staying the NFMA claims pending appeal and entering Rule 54(b) judgment for the Forest Service on the NEPA claims. Plaintiffs' NEPA claims are therefore properly raised on appeal.

portions from the 2004 environmental impact statement and record of decision that effectively, although not expressly, analyzed the expansion project's compliance with all nine Aquatic Conservation Strategy objectives.

2. *New Total Maximum Daily Load limits.* In their opening brief, Plaintiffs fail to explain how the Oregon Department of Environmental Quality's new Total Maximum Daily Load limits for sedimentation pollution in Reeder Reservoir trigger supplemental NEPA analysis. For example, Plaintiffs do not address whether or how the expansion project would cause sedimentation discharge to exceed the daily load limits until their reply brief, where they assert, with no evidentiary support, that logging associated with the expansion project risks increased sedimentation discharge. This argument is therefore waived. *See WildEarth Guardians v. EPA*, 759 F.3d 1064, 1072 (9th Cir. 2014). Moreover, even if Plaintiffs did not waive their argument with regard to the Total Maximum Daily Load limit, their claim would fail on the merits because the Oregon Department of Environmental Quality, which promulgated the Total Maximum Daily Load limit, did not indicate that the expansion project would be incompatible with the limit.

3. *Geological mapping project.* The Forest Service was not arbitrary or capricious in failing to prepare supplemental NEPA analysis in response to the

Oregon Department of Geological and Mineral Industries's (DOGAMI) geological mapping project, for two reasons. First, to the extent that Plaintiffs challenge the technology used by the Forest Service in the first geological mapping project, this argument concerns scientific methodology for which great deference is given to the Forest Service. *Allen*, 615 F.3d at 1130. Second, the Forest Service conducted detailed, site-specific geological mapping analysis in connection with the 2004 environmental impact statement and found no increased landslide risks related to the expansion project. The Forest Service therefore was not required to conduct additional geological mapping analysis in response to the inconclusive results from the DOGAMI geological mapping project, which ultimately found only that certain areas in northern Mount Ashland contained glacial deposits that posed no increased landslide risks.

*4. Expiration of the wetlands delineation.* The Forest Service was not arbitrary or capricious in failing to prepare supplemental NEPA analysis in response to the Army Corps of Engineers' expired wetlands delineation. The expired wetlands delineation would trigger supplemental NEPA analysis only if the new wetlands delineation differed "significant[ly]" from the expired wetlands delineation. 40 C.F.R. § 1502.9(c)(1). Here, however, the record evidence suggests

that, given the alpine environment of the expansion area, the new wetlands delineation likely will not differ from the expired wetlands delineation.[3]

5. *New climate change documents.* Plaintiffs identify ten documents published after the 2004 environmental impact statement that purportedly present significant new information regarding climate change in the expansion area. These documents include eight climate change studies and two internal climate change guidance memoranda from the Forest Service and Council on Environmental Quality. For each document, the Forest Service provided a reasonable explanation establishing why the document was either irrelevant or otherwise provided no significant new information regarding the potential impact of climate change on Mount Ashland ski area operations. Plaintiffs do not challenge the reasonableness of these explanations, and, given the Forest Service's technical expertise regarding the effect of climate change on national forests, we must give these explanations our "highest" deference. *Allen*, 615 F.3d at 1130. Accordingly, we cannot say that

---

[3]Because Plaintiffs fail to establish that the expired wetlands delineation presents significant new information regarding the environmental consequences of the expansion project, we need not address Plaintiffs' argument that, under *South Fork Band Council of W. Shoshone of Nev. v. U.S. Dep't of Interior*, 588 F.3d 718 (9th Cir. 2009), participation in the Army Corps of Engineers' permitting process does not discharge the Forest Service's disclosure obligations under NEPA.

the Forest Service was arbitrary or capricious in failing to prepare supplemental

NEPA analysis in response to these climate change documents.

**AFFIRMED.**